SILENA A. CHURCHILL, et al., plaintiffs in error, vs. DRURY CORKER, adm'r, &c., defendant in error.

[1.] Where the admission or exclusion of certain testimony cannot affect the real merits of the case, and no new trial is asked, the judgment of the Court below will not be reversed on account of any error as to the competency of said proof.

[2.] The Act prohibiting attorneys from testifying in certain cases, (*Cobb*, 280,) does not apply, where the facts to which the evidence refers, occurred in another case.

[3.] It is not necessary in this State, that any will, whether of real or personal property, should be re-proven when offered in evidence, in any Court in Georgia, as a muniment of title, but a certified copy of the probate, from the Ordinary, under the seal of that Court, makes it testimony.

Recitals in the judgments of the Courts of Ordinary, stand upon the same footing as the judgments of all other Courts of general jurisdiction.

[4.] Calvin B. Churchill conveyed by deed to Benjamin E. Gilstrap and Drury Cork-er, in trust for his wife, Mary Churchill, certain slaves, to have and to hold said slaves, together with all their future increase, unto his said wife, Mary, her heirs, executors, administrators and assigns forever; the said Calvin B. Churchill reserving to himself the use of the said negroes, during his natural life, free from charge, let, hire or hindrance; the said Calvin B. Churchill to work, use, occupy and enjoy the profits arising from their labor, free from any accountability whatever; but said negroes and their increase subject to any disposition the said Mary Churchill may think proper to make, at or after her death, either by will, deed, or otherwise.

*Held*, 1st. That by this deed, the marital rights of the husband to the property embraced in it were excluded, except as to the enjoyment of the property during his life Beyond this, the dominion over the property by the husband was extinguished; his power of alienation was gone; so his power of disposition by will; so its inheritable quality from him. 2d. The wife dying first, she had the right to dispose of her separate property in the slaves by will, which was the remainder after her husband's death. 3d. Had the wife survived the husband, the trust would, *ea cnstanti*, have become executed by the vesting of the absolute title in her. Had she died first, without having exercised the power of appointment, the property would have gone to the husband, as her heir at law. As it now stands, it vests in her personal representative.

[5.] Where a power is given by deed, the Ordinary will grant probate of the will of a married woman, without consent of her husband; and were it otherwise, the assent and acquiescence of the husband will be presumed, after the lapse of many years, the husband never having contested its validity.

[6.] There is nothing in the words of this will, which would prevent the wife from disposing of this property by will, as she has done.

[7.] The administrator with the will annexed, and not the trustees, are the proper parties to institute suit for the recovery of this property.

Trover, from Burke County. Decided by Judge Holt, April Term, 1858.

This was an action of Trover, brought by Drury Corker, administrator, with the will annexed, of Mary Churchill, deceased, against Silena A. Churchill and Almarion O. Corker. Upon the trial, the plaintiff offered in evidence, the testimony of several witnesses, to prove the signatures of Calvin B. Churchill and Rial W. Gilstrap, witnesses, and Drury Corker, J. P., attestant to a certain deed shown. Defendants objected to proof of the signature of Drury Corker, because the deed was made to him, and he was plaintiff in the present action and the objection was allowed. One of the witnesses furt

testified, that C. B. Churchill had been dead two or three years; Mrs. Mary Churchill died in 1843 or 1844; R. W. Gilstrap died in 1852 or 1853.

The deed from Calvin B. Churchill to Drury Corker and Benjamin E. Gilstrap, trustees, a copy of which is below, was then offered, accompanied with the certificate of Edward Garlick, Clerk of the Superior Court of Burke county, that it had been recorded. Objected to on the ground that the deed appeared to be attested by Drury Corker, J. P., one of the feoffees, and because there was no proof of delivery. The Court overruled the objection, and held that the deed and certificate were admissible under the Act of 1855 and 1856, and that the execution had been sufficiently proven; to which ruling of the Court defendants excepted. Plaintiff's counsel read to the jury the deed and certificate of the Clerk, as follows:

STATE of GEORGIA, Burke County.

This indenture, made the fourth day of June, in the year of our LORD, one thousand eight hundred and forty-one, between Calvin B. Churchill, of the county of Burke, and State of Georgia, of the one part, and Benjamin E. Gilstrap and Drury Corker, in trust for Mary Churchill, (wife of the said Calvin B. Churchill,) of the State and county of the other part, witnesseth, that the said Calvin B. Churchill, for and in consideration of the natural love and affection which I have and do bear unto my beloved wife, Mary Churchill, and for divers other good causes and considerations, me hereunto moving, and for the further sum of one dollar, to me in hand well and truly paid by the said Benjamin E. Gilstrap and Drury Corker, trustees as aforesaid, at and before the sealing and delivering of these presents, the receipt whereof is hereby acknowledged, have given, granted, bargained, sold, released, confirmed and conveyed, and doth by these presents, fully and freely give, grant, bargain, sell, release, confirm and convey unto the said Benjamin E. Gilstrap and Drury Cork-

er, trustees as aforesaid, the following negro slaves, to-wit, *Ancil, Tom, Cillar, Hetty, Love, Alfred, Emily, Celia, Amanda and Winney.*

To have and to hold, said negro slaves, together with all their future increase, unto her, the said Mary Churchill, my beloved wife, and to her heirs, executors, administrators and assigns forever. Provided, nevertheless, that the said Calvin B. Churchill reserves to himself the use of said negro slaves during the term of his natural life, free from any charge, hire, let or hindrance whatever; but is to work, use, occupy and enjoy the profits arising from their labor, free from any accountability whatever, but said negroes and their increase, subject to any disposition she, the said Mary Churchill, may think proper to make at or after her death, either by will, deed or otherwise.

In witness whereof, the said Calvin B. Churchill hath hereunto set his hand and affixed his seal the day and date first above written.

CALVIN B. CHURCHILL, [*L. S.*]

Signed, sealed and delivered in presence of test,

WILLIAM KILPATRICK,

R. W. GILSTRAP,

DRURY CORKER, *J. P.*

Recorded 5th September, 1842, Record Book, Deeds No. 8, Folio 477.

E. GARLICK, *Clerk.*

*Jacob Chance* testified: That he was present when the deed shown him, and which had just been read, was delivered and executed; it was at Mr. Churchill's house and was delivered to Benjamin E. Gilstrap; it was in 1841; the witnesses, the trustees, the maker, Mrs. Mary Churchill and himself were present; Mr. Churchill handed it to B. E. Gilstrap, and said, 'here!' That he has not seen the deed from that time until to-day; that he believes the paper he holds in his hand is the identical paper he saw executed, from the signatures of the parties that signed the deed. That he lived

with Calvin B. Churchill from January to first part of June, 1841, as overseer; he had and has worked there before and since. That he never saw but one deed made by Churchill to his wife, and attested as this one is, delivered; plaintiff told me since the last Court that he had found the old deed; John S. Byne had sent it to him; plaintiffs counsel asked witness through whom C. B. Churchill had derived the property in dispute. Defendant objected, because irrelevant—objection overruled and defendant excepted.

*Jocob Chance* further testified: That Churchill derived the negroes through his wife; that old man Gilstrap, her father, left them to her.

Plaintiffs counsel then offered copy will of Mrs. Mary Churchill, and affidavit of Thomas Cates to same, as follows:

STATE OF GEORGIA, ⎫   *In the name of God, Amen!* I
Burke County.   ⎰ Mary Churchill, of the State of Georgia, and county of Burke, being weak of body, but of sound, disposing mind and memory, do make, ordain and publish this, my last will and testament in manner and form following, that is to say:

*Item First:* I recommend my soul to Almighty GOD.

*Item Second:* If the child with which I am now pregnan should be born, and lives, I give and bequeath unto said child all the negroes named in the deed made from Calvin B. Churchill, my husband, to myself, together with all their future increase. Provided if the said child should be a male, and dies in its minority—or should it be a female, and dies in its minority, or without intermarrying—then and in that case I give and bequeath the whole of said negroes embraced, together with all their future increase to my beloved brother Ryal W. Gilstrap; but in case the said Ryal W. Gilstrap should die without a lawful child or children, then and in that case it is my wish and desire that the whole of said negroes should be equally divided between my brother Benjamin E. Gilstrap, Sarah Clinton, Julia Clinton, DeWitt Clin-

ton, and Katharine Clinton, my sister Angelina Lanier's children by her former husband, Lawson Clinton, to be equally divided share and share alike.

*Item Third*, and last. I do hereby appoint my brothers Benjamin E. Gilstrap and Ryal W. Gilstrap, the executors of this my last will.

In witness whereof, I have hereunto set my hand and seal, this 20th September, 1842.

MARY CHURCHILL, [<em>L. S.</em>]

THOMAS CATES,
JOSEPH CATES, Sen.
DRURY CORKER, *J. P.*

STATE OF GEORGIA, }    In the Court of Ordinary of said coun-
Burke County.    } ty, appeared in open Court, Thomas Cates, who being duly sworn, deposeth and saith, that he was present and did see Mary Churchill sign, seal and execute the foregoing paper writing as her last will and testament; that Drury Corker and Joseph Cates, Sen., signed the same with this deponent as witnesses thereto in the presence of the testatrix, and of each other, and that the testatrix signed said instruments in the presence of the respective witnesses, and that she was of sound and disposing mind and memory at the time of the execution of said instrument.

THOMAS CATES.

Sworn to in open Court, Nov. 6th, 1843.

T. H. BLOUNT, Clerk.

Defendant's counsel objecting on the ground that the will was not evidence in said cause, the same being a declaration of title made by deceased.

The Court overruled the objection and allowed the will to be read to the jury, holding that the will was competent evidence for the jury, to show an execution of the power, granted in the

deed, by Mrs. Churchill.   To which rulings of the Court defendants excepted.

Defendants further objected, because the copy will exhibited, showed no judgment of the Court of Ordinary, admitting the same to probate and record, and that in this case the law required the actual execution of the will to be proven by competent testimony, and that the probate of itself would not be sufficient proof of execution, but only of the testamentary character of the paper, even if the judgment of probate were shown.   Which objection the Court overruled, to which defendants objected.   Col. Thomas M. Berrien offered to prove that the order for record was passed in the Court of Ordinary. Objected to on the ground of his having then been counsel and now was counsel for the estate of Mrs. Mary Churchill. Objections overruled by the Court and defendants excepted.

*Col. T. M. Berrien* testified that he was the counsel of propounder of the will of Mrs. Mary Churchill, in the Court of Ordinary when the same was probated; that he took, and the Court passed, an order for record in the usual form and wrote the affidavit; that he had, he thought, seen the said order upon the minutes of the Court of Ordinary; that he believed the minutes of said Court had been destroyed by fire previous to year 1849; those subsequent to 1849 were preserved; the minutes, with all the records of said Court, were destroyed at the burning of the Court House on 24th January, 1856, he believed, as they had not, been found since said last mentioned time; said will was proven in 1843, and he thinks a short time after Mrs. Churchill's death.

*Ja's F. Navy* testified, that the records and papers of Court of Ordinary had been destroyed, except the minutes since 1849.

Plaintiffs put in evidence the following order of Court of Ordinary, defendants objecting to the recitals in said order. The Court admitted the order, to which defendants excepted.

GEORGIA,        } WAYNESBORO', Monday, Nov. 5th 1855.
  Burke county, }

The Court met pursuant to adjournment.   Present his

Honor. Edward Garlick, Ordinary. The will of Mrs. Mary Churchill having been proven in due form of law at November Term of the Court of Ordinary for Burke county, for the year eighteen hundred and forty-three, and an order taken for recording thereof, but the clerk of said Court having failed to record said will, it is on motion of Berrien & Jones, counsel for the executor, Benjamin E. Gilstrap, who was the executor of said Mary Churchill, ordered, that the aforesaid will be recorded now for then.

*Thomas M. Berrien, Esq.,* testified, that Benjamin E. Gilstrap was dead, and he thought Mrs. Mary Churchill died in 1843. William Moore and Simeon Warnock testified that they were present when plaintiff demanded the negroes of defendant; no negroes were named, but they understood it was the negroes now in dispute. Defendants refused to deliver them up, saying they would hold them till they could legally deliver them. Stephen A. Corker, testified that he was the son of Silena A. Churchill; knows the negroes, &c., that the children are the increase of the original negroes; and proves what are their ages, yearly hire and expenses.

Plaintiffs closed their case and defendants offered no testimony.

The cause being closed, counsel for defendants requested the Court in writing to charge: " That Calvin B. Churchill had the right, in making this deed, to use words which would defeat the right given to his wife to make a will, and that if she or the trustees accepted a deed of this kind, she or they received it as it was drawn, and that no title would pass under such a deed. That a separate estate in the wife is not created by the deed made by Churchill. That the estate of the wife is a vested remainder in fee. That the power attempted to be conferred is included in the fee, and therefore nugatory, or it is in restriction or qualification of the fee, and therefore void. That the estate of the wife being a remainder in fee, not for her sole and separate use, the husband became

entitled to it, and the plaintiff cannot recover. That when power to devise is given to the wife, a general assent that the wife may make a will is not sufficient, it must be shown that he consented to the particular will she may make, and his consent should be given when her will is proven as a testamentary conveyance. He should be examined before the Ordinary, and until this is done, the paper cannot have the effect and operation of a will. That if a separate estate be created in trustees for the use of the wife, the title is in the trustees, and the plaintiff in this case is not entitled to recover, but the trustees under the deed are. That if the deed from Calvin B. Churchill to his wife, Mary, authorized her to dispose of the property named in the deed, from him to Drury Corker and Benjamin E. Gilstrap as trustees, that in disposing of the same she should have adopted the particular mode or manner pointed out for the disposition of the property : And, further, that if by the terms of the deed she was required to exercise the right at the time named in the deed, then if she made and executed a will at any other time than is named in the deed, that such a will is not valid in law."

" That Calvin B. Churchill had the right to restrict his wife in disposing of the property to a particular form of conveyance, and that in the exercise of the power given her to dispose of the property, he had the right to say that she must dispose of it at the time named in the deed, namely, ' *at or after her death.*' That if these words are in effect '*contradictory,*' because Mary Churchill could not dispose of the property ' *after her death,*' that notwithstanding this she could have made a will in her ' *last illness,*' and that this construction should be placed on the words referred to. All of which requests to charge, the court refused, but on the contrary charged the jury :"

" That the effect of the deed is to vest the title to the slaves in the trustees upon the trusts declared in the deed. That the legal construction of the deed was an estate in the trustees

for the use of Calvin B. Churchill for his life with remainder in fee to Mrs. Mary Churchill (his wife) if she should survive him, with power of appointment by deed, will or otherwise; and should she not survive her husband, then the remainder after Calvin Churchill's life estate, to such persons as she should appoint by deed, will or otherwise. That the power given to Mrs. Churchill by the deed was not inconsistent with the fee, and that the estate was, though not by express words, for the separate use of the wife, and the legal title vested in the trustees. That the power of disposing of the slaves given to the wife is good, and its legal interpretation is to empower her to dispose of them by will, deed or otherwise, to take effect at or after her death, according as she did or did not survive her husband."

"That the will of Mary Churchill, in evidence, is a good execution of the power contained in the deed, and that the trust was now fully executed and the legal title in the plaintiff, and not in the trustees."

The Court further charged the jury that; " there is some proof before you, I believe, to show that Calvin B. Churchill got the property through his wife." To which charge and refusal to charge, defendants excepted.

Defendants objected to the copy will read to the jury going to their room with them, which objection was overruled by the Court and defendants excepted.

The jury brought in a verdict for plaintiff for $9,220.

And counsel for defendants tender this their bill of exceptions and say:

1st. That the Court erred in admitting in evidence the said copy will of Mrs. Mary Churchill.

2d. That the Court erred in allowing Thomas M. Berrien, Esq., to testify concerning the order of record of said will.

3d. That the Court erred in refusing to charge the jury as requested by defendant's counsel.

4th. That the Court erred in charging the jury as he did.

5th. That the Court erred in telling the jury there was

some proof to show that Calvin B. Churchill got the property by his wife.

MILLERS & JACKSON; McKENZIE & WARD, for plaintiffs in error.

BERRIEN & JONES, *contra.*

*By the Court.*—LUMPKIN, J. delivering the opinion.

Whether the testimony of Jacob Chance was, or was not admissible, it is useless to enquire. The merits of this case depend upon the law of the case, arising out of the deed made by Calvin B. Churchill to his wife Mary, and as there was no motion made for a new trial, all minor and immaterial matters should yield to that. What will it profit the plaintiff in error in the end, to carry these outposts, provided the citadel cannot be stormed ? How much time and money are wasted in pressing these immaterial points. The most that can be said against this evidence is, that it was irrelevant; and of course the legal rights of the parties growing out of construction of the instrument already referred to, cannot be affected by it.

Was Col. Berrien a competent witness under the facts disclosed by this record ? We ask why not ? The facts testified to by him occurred in another case, not in this; and previous to his employment in the present case. The witness neither comes within the letter nor the spirit of the statute of 1850, excluding the testimony of attorneys in certain cases. *Cobb* 280.

But reject the evidence of this witness, and still there will be sufficient proof left to sustain the verdict. Navy proves the destruction of the records; and the extract from the minutes establishes the probate of the paper.

It is contended that proof should have been made in the Superior Court of the execution of Mrs. Churchill's will. The

case of *Rich vs. Cochell* 16 *Ves.* 369, 376, relied on by counsel in support of this proposition was pending in a Court of Equity; whereas the suit before us is an action at law. The rule of evidence may be different. This will was offered and received in evidence not to show title in Mary Churchill, or the claim of title by her; but to prove, that the power vested in her by the deed of Calvin B. Churchill had been executed. And in this view it was clearly proper. Because, without the execution of the power, the property would have passed to her surviving husband as heir at law. Admitted in evidence, it showed further, and properly too, that the title vested in her by the deed of Calvin B. Churchill had been cast upon the plaintiff as her administrator, with the will annexed.

As to the general proposition, that the will of a married woman, made in the execution of a power, is not competent testimony, without actual proof of its execution in any and every Court where that power and its exercise are called in question; we maintain broadly, that it is not necessary in this State, that any will, whether of realty or personalty, should be proven, when offered in evidence as a muniment of title. But that a certified copy, from the Ordinary, under the seal of that Court, makes it evidence. This results necessarily from the fact, that by law, Courts of Ordinary in Georgia, are clothed with original, general and exclusive jurisdiction, except by appeal, over testate and intestate's estates. And are also Courts of record. It is here, that the validity of wills must be tried and established. In this case, the extract from the minutes of the Court demonstrates, that the Ordinary did pass judgment upon this paper, ordering it to be recorded, and the copy is certified by the Ordinary. It being in proof, that both the original will and record were burnt after probate; the certified copy obtained before the burning is good, as secondary evidence. 1 *Wms. on Ex'ors.* 157, 158, 159.

Again it is objected, that the recitals in the order of the

Court of Ordinary offered by plaintiff below, were not evidence against the defendants. The judgments of the Court of Ordinary import verity, as much as the judgments of the Superior Court, and are therefore at least presumed to be true, until those who dispute them, can show the contrary.

It is insisted that a separate estate in the wife is not created by the deed made by Churchill, and that the estate attempted to be given, being a remainder in fee, not for her sole and separate use, the husband became entitled to it; and hence the plaintiff cannot recover. We are not prepared to admit, that a separate estate in the wife was not created by this deed. But suppose it did not, a husband may clearly make a gift to his wife, which will be good as against his personal representatives. 1 *Atkin*, 271; 3 *Atkin*, 393, 394; *Ram on Assets*, 213.

In *Hovenden on Frauds*, 271, and *Swinburn on Wills*, *part* 11, *section* 9, this doctrine is laid down: Any consent on the part of the husband given after marriage, that the wife may dispose of personalty by will, if such consent rests merely in agreement between the parties themselves, and be not guarantied by bond, may be retracted, at any time before assent given by the husband, to the probate of such will. In the case before us, the agreement rested in and was guarantied by a solemn conveyance from the husband to the wife.

But that is not all. The will of the wife was proven, in November, 1843; the husband not appearing to contest it. The husband died in 1855, more than eleven years after the probate of his wife's will. He never sought to disturb it by calling on the executors to prove it in solemn form or otherwise; nor in any other way seeking its revocation. It is still of force and unrevoked. Nay more; by the Act of 1845, passed ten years before the husband's death, the time within which proceedings for correcting or setting aside any will, or requiring proof in solemn form, may be instituted, is limited to seven years. The husband then having lived ten

years after the passage of this law, and having died acqui-
escing in the probate of his wife's will, it is too late for vol-
unteers under him to rise up and attack the probate, directly,
or indirectly. The husband's consent will be presumed.
The probate is conclusive under the statute against all the
world. The effect of the will is the only open question.

For myself, I am free to confess, that I have but little taste,
perhaps for want of discrimination, for the nice distinctions
that have been submitted in the discussion, as to the nature
of the estate given by the husband to the wife, in this pro-
perty. That she had the power to dispose of it, there can
be no dispute; that she has executed this power in a legal
way, is equally clear. But she had something more than a
mere power of disposition. It was a power coupled with an
interest. Had the wife survived the husband, the life estate
reserved to the husband having terminated, the whole estate
would have vested at once absolutely in her. But the wife
dying first, all she could do was to execute the power given
to her by disposing of the property which she did by will.
None of the views presented by the learned counsel, have
caused this Court to hesitate in holding, that the wife had
authority under the deed from her husband to execute the
power delegated to her, by disposing of the property by will,
in the manner she has done. The husband intended by his
deed to divest his marital rights over this property, except as
to its enjoyment during his life. For this purpose he inter-
posed trustees. For this purpose he invested his wife with
the power of disposition. Henceforth he parted with the
dominion over this property; retaining the usufruct only;
the power of alienation was gone; so too the power of dis-
position by will; so its inheritable quality passed away from
him.

What then, if the Court did refuse to charge, that the wife
took a vested remainder in the property, and that the hus-
band thereby became entitled to it; counsel have no reason
to complain of the refusal of the Court to charge this; since

the express power to dispose of that remainder, appearing upon the face of the deed, and the execution of the power having been proven, it prevented the husband from taking, whether she had a vested remainder or not.

It is further assigned, as error, that the Court refused to charge, that if a separate estate was created in the trustees, the trustees, should have sued, and not the plaintiff.

Without saying more upon this head, it is sufficient to remark, that upon the death of the wife, the probate of the will and the death of the husband, the property vested in the legal representative of the wife; whenever the remainder vested in one capable of taking and holding, the trust, being *functus*, would cease of course; and no estate whatever remained in the trustees.

Counsel find fault with the Court for telling the jury not very emphatically to be sure, that " he believed there was some proof," that Calvin B. Churchill got the property in dispute by his wife.   Chance, one of the witnesses, swore to it, positively; and there was no evidence to the contrary; there was no dispute about the facts; and this was conceded by counsel in arguing before the jury as admitted here.   Surely then, the Court did not trench upon the province and privilege of the jury in saying, " he believed" there was some proof upon this very immaterial point.   He did not say, that the fact was or was not proven, which by the Act of 1849, is prohibited; but stated merely that there was some proof " he believed" to a certain point.   This is not forbidden by the statute.

I fear I shall weary the profession with this case.   Some of the smaller grounds, may have been overlooked.   Suffice it to say, they are all overruled, and the judgment of the Circuit Court affirmed generally.

Judgment affirmed.